UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRADLEY HALLER,

                          Plaintiff,

        -v.-

SULMAN USMAN, JAMISON HINDER,
and ADAPTIVE GREEN, INC.,

                          Defendants.

24 Civ. 977 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Bradley Haller brings this action against Defendants Sulman
Usman ("Usman"), Jamison Hinder ("Hinder"), and Adaptive Green, Inc.
("Adaptive") (collectively, "Defendants"), alleging claims of breach of contract, a
declaratory judgment, unjust enrichment/*quantum meruit*, an equitable
accounting, a constructive trust, and fraud, all under New York common law.
Before the Court is Defendants' motion to dismiss Plaintiff's First Amended
Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the
reasons set forth in the remainder of this Opinion, the Court grants the motion
in part and denies it in part, dismissing all claims but Plaintiff's quasi-contract
claim for unjust enrichment.

**BACKGROUND**[1]

**A.    Factual Background**

On or about February 1, 2017, Plaintiff entered into an employment
agreement with Defendant Adaptive to become its "Project Director." (FAC ¶ 8;

---

[1]    This Opinion draws its facts from the First Amended Complaint ("FAC" (Dkt. #21)), the
        operative complaint in this action, the well-pleaded allegations of which are taken as
        true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009).

Emp. Agmt. 1)). The Employment Agreement contains a non-compete clause purporting to disallow Plaintiff from engaging in any business that competes with Adaptive "while [he] remains a shareholder of Adaptive Green, Inc." (Emp. Agmt. 1). It provides that Adaptive "shall pay [Plaintiff] a biweekly salary … and offer a onetime stock award equivalent to 10% of the Company as of February 1st, 2017." (*Id.*). The Employment Agreement specifies that Plaintiff was and would "remain at all times an at-will employee." (*Id.*). The Agreement was signed on February 1, 2017, by Plaintiff and Defendant Usman in his capacity as President of Adaptive. (*Id.* at 2). Plaintiff alleges that two manual revisions were made to the Employment Agreement *prior to* its mutual execution: the non-compete clause was revised to include a duration of "[six] months" (FAC ¶ 10); and Plaintiff's bi-weekly salary in the compensation clause was "manually redacted" (*id.* ¶ 11).

Regarding his salary, Plaintiff alleges that "at the time of [his] hiring many months prior to the execution of the Employment Agreement, the parties *orally agreed* to a bi-weekly salary of approximately $60,000.00." (FAC ¶ 11 (emphasis added)). Defendants paid this salary "by check or electronic

---

The Court also relies, as appropriate, on certain of the exhibits attached to the FAC ("FAC, Ex. [ ]" (Dkt. #[ ])), including the Employment Agreement (FAC, Ex. A (Dkt. #21-1) ("Emp. Agmt.")), the Profit Participation Agreement (FAC, Ex. B (Dkt. #21-2) ("PPA")), and the Sub Agreement (FAC, Ex. C (Dkt. #21-3) ("Sub Agmt.")), each of which is incorporated by reference in the FAC. *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #22-2); to Plaintiff's memorandum of law in opposition as "Pl. Opp." (Dkt. #23); and to Defendants' memorandum of law in reply as "Def. Reply" (Dkt. #28).

payment from the time Plaintiff was hired and [this was] not included specifically in the Employment Agreement, since the parties had already come to an agreement regarding that term." (*Id.*). In other words, "[t]he Employment Agreement did not specify Plaintiff's salary because the parties had already agreed upon the salary amount as demonstrated by the continuous payments" during the months prior to the Agreement's execution. (*Id.* ¶ 13). Plaintiff's bi-weekly salary was paid "without fail during his tenure at" Adaptive. (*Id.* ¶ 14).

Regarding the onetime stock award offer, Plaintiff alleges that "Defendants made numerous and extensive representations to [him] reiterating and confirming [his] 10% ownership interest in Defendant Adaptive," including an email exchange on July 15 and July 18, 2019. (FAC ¶¶ 24-26). Furthermore, Plaintiff alleges that, in April 2021, in order to "subvert" his right to a 10% ownership interest, Defendants offered him a "Profit Participation Agreement" (or "PPA"), which was signed by Defendant Usman, and which would entitle Plaintiff to his salary plus a "Cash Bonus Compensation equal to 10% of the 'Cash Available' for each year that (he was) employed by the Company." (*Id.* ¶¶ 28-29 (quoting PPA)). The PPA was "amended by the parties in significant fashion *prior to its execution by Plaintiff*," and Plaintiff alleges that Usman "did not object to any of the changes when it was delivered to him with Plaintiff's signature." (*Id.* ¶ 31 (emphasis added)). Subsequently, in another alleged effort to "subvert" the stock award offer, on July 9, 2021, Defendants offered Plaintiff the "Sub Agreement," which would give Plaintiff 10% of Defendant Hinder's equity in Adaptive as of April 26, 2023, and would "occur

when the company restructures and refiles for certifications." (*Id.* ¶ 32; Sub Agmt.).

In December 2021, Defendants terminated Plaintiff's employment, having allegedly denied him his ownership stake pursuant to the Employment Agreement, and his additional benefits pursuant to the Profit Participation Agreement and the Sub Agreement. (FAC ¶ 38).

## B.    Procedural Background

Litigation regarding the underlying events in this action began in the Superior Court of New Jersey, Morris County. (Def. Br. 1; Pl. Opp. 6). That action was removed to the United States District Court for the District of New Jersey, where it was ultimately dismissed on jurisdictional grounds without reaching the merits. (Def. Br. 1; Pl. Opp. 6). On January 12, 2024, Plaintiff refiled this action in New York State Supreme Court, New York County, whereupon Defendants removed the case to this Court. (Def. Br. 1; Pl. Opp. 6; Dkt. #1 ¶ 2). Defendants accepted service of the summons and complaint on January 16, 2024. (Dkt. #1 ¶ 3). Defendants filed their notice of removal on February 9, 2024. (Dkt. #1).

On March 1, 2024, Defendants filed a pre-motion letter requesting leave to file a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. #13). On March 6, 2024, Plaintiff filed a letter in opposition (Dkt. #15), and the Court set a pre-motion conference for April 4, 2024 (Dkt. #16). After an adjournment (Dkt. #18), the pre-motion conference was held on April 9, 2024, during which the Court set a deadline for the parties

to inform the Court of settlement efforts, a deadline for Plaintiff to file an amended complaint, and a briefing schedule regarding a motion to dismiss the amended complaint (April 9, 2024 Minute Entry).

On May 10, 2024, the parties informed the Court that they had not reached a resolution. (Dkt. #20). Accordingly, on May 30, 2024, Plaintiff filed the First Amended Complaint, the operative complaint in this action. (Dkt. #21). Defendants moved to dismiss the First Amended Complaint pursuant to Federal Rule of Procedure 12(b)(6), and filed a memorandum of law in support thereof, on June 28, 2024. (Dkt. #22, 22-2). On July 26, 2024, Plaintiff filed his memorandum of law in opposition. (Dkt. #23). And, after an extension request was granted (*see* Dkt. #24-27), Defendants filed their memorandum of law in reply on September 6, 2024 (Dkt. #28).

## DISCUSSION

### A. Applicable Law

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is entitled to relief if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While

*Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

That said, a court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted and alteration adopted) (quoting *Iqbal*, 556 U.S. at 678)). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

On a motion to dismiss, "[t]he Court may consider any written instrument attached to the [c]omplaint as an exhibit, any statements or documents incorporated by reference in the [c]omplaint, documents that are 'integral' to the [c]omplaint even if they are not incorporated by reference, and matters of which judicial notice may be taken." *Donoghue* v. *Gad*, No. 21 Civ. 7182 (KPF), 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022) (citing *Chambers*

v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

## B.    Analysis

Plaintiff brings a claim for breach of contract (Count II); a related standalone claim for a declaratory judgment (Count I); several quasi-contract claims, including claims for unjust enrichment/*quantum meruit* (Count III), an equitable accounting (Count V), and a constructive trust (Count VI); and a fraud claim (Count IV).  The Court addresses each claim in turn.

### 1.    The Court Dismisses Plaintiff's Claims for Breach of Contract

To state a claim for breach of contract under New York law,[2] a plaintiff must allege four elements: "[i] the existence of a contract, [ii] performance of the contract by the plaintiff, [iii] breach by the defendant, and [iv] damages suffered as a result of the breach."  *Ebomwonyi* v. *Sea Shipping Line*, 473 F. Supp. 3d 338, 347 (S.D.N.Y. 2020), *aff'd*, No. 20-3344, 2022 WL 274507 (2d Cir. Jan. 31, 2022) (summary order).  The Court dismisses Plaintiff's breach of contract claim regarding the Employment Agreement, the Profit Participation Agreement, and/or the Sub Agreement (Count II) for failure to allege the existence of a valid contract.

---

[2]    The parties do not dispute that New York law applies in this case.  The parties' "implied consent … is sufficient to establish choice of law."  *Krumme* v. *WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (internal quotation marks omitted); *see also Valentini* v. *Grp. Health Inc.*, No. 20 Civ. 9526 (JPC), 2021 WL 2444649, at *6 (S.D.N.Y. June 15, 2021) ("The parties do not dispute that New York law applies in this case, and the Court accordingly applies that law."), *aff'd*, No. 22-157, 2023 WL 2027273 (2d Cir. Feb. 16, 2023) (summary order).  Accordingly, the Court applies New York law to each of Plaintiff's claims.

### a.   The Employment Agreement Omits a Material Term

A breach of contract claim must be dismissed where the unambiguous terms of the contract do not support a plaintiff's claim.  *Soroof Trading Dev. Co. Ltd.* v. *GE Fuel Cell Sys. LLC*, 842 F. Supp. 2d 502, 509-10 (S.D.N.Y. 2012), *cited in Spinelli* v. *Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015).  Put somewhat differently, the actual text of the parties' agreements establish the rights and obligations of the parties and prevail over conclusory allegations in the complaint.  *805 Third Ave. Co.* v. *M.W. Realty Assoc.*, 58 N.Y.2d 447, 451 (1983).

"[A] breach of contract claim will be dismissed where a plaintiff fails to allege the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." *Generation Next Fashions Ltd.* v. *JP Morgan Chase Bank, NA*, 698 F. Supp. 3d 663, 673 (S.D.N.Y. 2023) (quoting *Fink* v. *Time Warner Cable*, 810 F. Supp. 2d 633, 644-45 (S.D.N.Y. 2011) (internal quotation marks omitted)).  That is because:

> [u]nder New York contract law, the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties.  If there is no meeting of the minds on all essential terms, there is no contract … because an enforceable contract requires mutual assent to the essential terms and conditions thereof.

*Schurr* v. *Austin Galleries of Ill., Inc.*, 719 F.2d 571, 576 (2d Cir. 1983) (internal citations omitted); *accord Compass Prods. Int'l LLC* v. *Charter Commc'ns, Inc.*, No. 22-254, 2023 WL 2358479, at *2 (2d Cir. Mar. 6, 2023) (summary order).  As a result, "if some of the terms included are too indefinite, no legally

enforceable contract will result." *V'Soske* v. *Barwick*, 404 F.2d 495, 500 (2d Cir. 1968), *cert. denied*, 394 U.S. 921 (1969); *accord Hudson & Broad, Inc.* v. *J.C. Penney Corp., Inc.*, 553 F. App'x 37, 39 (2d Cir. 2014) (summary order).

"Although the omission of essential terms, or inclusion of terms that are too indefinite, will render a contract unenforceable, the terms contemplated by the agreement need not be fixed with complete and perfect certainty for a contract to have legal efficacy." *Morelli* v. *Alters*, No. 19 Civ. 10707 (GHW), 2020 WL 1285513, at *9 (S.D.N.Y. Mar. 18, 2020) (internal quotation marks omitted); *see also Herman* v. *Duncan*, No. 17 Civ. 3325 (PGG), 2019 WL 2137335, at *6 (S.D.N.Y. May 16, 2019) (citing *Kolchins* v. *Evolution Mkts., Inc.*, 8 N.Y.S.3d 1, 10-11 (1st Dep't 2015) (citing *Cobble Hill Nursing Home, Inc.* v. *Henry & Warren Corp.*, 74 N.Y.2d 475, 483 (1989))). Still, essential terms "should not be missing altogether." *Herman*, 2019 WL 2137335, at *9 (citing *Rule* v. *Brine, Inc.*, 85 F.3d 1002, 1010 (2d Cir. 1996) (citing *Joseph Martin, Jr., Delicatessen, Inc.* v. *Schumacher*, 52 N.Y.2d 105, 109 (1981))).

"[U]nder New York law, a term is essential if it seriously affects the rights and obligations of the parties." *Morelli*, 2020 WL 1285513, at *9 (internal quotation marks omitted). In the context of employment contracts, courts typically consider the employee's "job responsibilities, benefits, compensation [and] the duration of the contract" to be essential terms. *Roelcke* v. *Zip Aviation, LLC*, 571 F. Supp. 3d 214, 230 (S.D.N.Y. 2021) (citing *Geller* v. *Reuben Gittelman Hebrew Day School*, 826 N.Y.S.2d 103, 104 (2d Dep't 2006) (finding that the material terms of an employment agreement include "salary

and the amount of services required")); *see also Elite Tech. N.Y. Inc.* v. *Thomas*, 894 N.Y.S.2d 420, 421 (1st Dep't 2010) ("The essential elements of an effective employment contract consist of … the terms of employment, which include the commencement date, the duration of the contract and the salary[.]" (internal quotation marks omitted)); *Zaitsev* v. *Salomon Bros.*, 60 F.3d 1001, 1004 (2d Cir. 1995) ("The essential terms of an employment contract include compensation and duration." (citing *Crabtree* v. *Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 54 (1953))).

Here, the Employment Agreement does not contain the precise amount of Plaintiff's compensation. Instead, it states that Adaptive "shall pay [Plaintiff] a biweekly salary" and "offer a onetime stock award equivalent to 10% of the Company as of February 1st, 2017)." (Emp. Agmt. 1). According to Defendants, the Employment Agreement therefore fails to supply several essential terms, including Haller's compensation; what would constitute "reasonable" compensation;[3] and the meaning of the "stock award equivalent," specifically, what form it would take. (Def. Br. 7 (citing Emp. Agmt.)).

With particular respect to the issue of Plaintiff's salary, the Court accepts as true the allegations in the First Amended Complaint that the amount of the bi-weekly salary was "manually redacted prior to the mutual execution of the

---

[3]    The term "reasonable compensation" appears nowhere in the Employment Agreement. (*See generally* Emp. Agmt.). Plaintiff's allegations regarding his belief that his salary was unreasonable (*see* FAC ¶¶ 18, 30, 65, 69-72) are addressed in the section on Plaintiff's unjust enrichment/*quantum meruit* claim, *infra* Section B.3.

Employment Agreement." (FAC ¶ 11).[4]  The question, then, is whether an employment contract providing that the employer shall pay the employee a bi-weekly salary, but not specifying the amount of that salary, is indefinite for lack of an essential term.  Ordinarily, salary is an essential term of an employment contract.  *See, e.g.*, *Roelcke*, 571 F. Supp. 3d at 230; *Elite Tech.*, 894 N.Y.S.2d at 421.  And, ordinarily, essential terms "should not be missing altogether" from the contract.  *Herman*, 2019 WL 2137335, at *9.  But "before finding that an agreement is too indefinite, 'a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear.'"  *Foros Advisors LLC* v. *Digital Globe, Inc.*, 333 F. Supp. 3d 354, 360 (S.D.N.Y 2018) (quoting *Cobble Hill*, 74 N.Y.2d at 483).

Plaintiff alleges that "many months prior to the execution of the Employment Agreement, the parties orally agreed to a bi-weekly salary of approximately $60,000.00" (FAC ¶ 11), which explains why his salary was not specified in the Employment Agreement (*see* Pl. Opp. 13-14).  Plaintiff further argues that his salary can be determined by reference to other extrinsic

---

[4]    There is no mutual assent problem with respect to when the Employment Agreement was manually redacted because the Court accepts as true Plaintiff's allegation that the Agreement was amended prior to its mutual execution.  Defendants argue that Plaintiff rejected the Employment Agreement by manually changing its terms without their assent. (Def. Br. 8).  However, Plaintiff alleges that these manual revisions occurred prior to the mutual execution of the Employment Agreement.  (FAC ¶¶ 10-11).  Although this allegation could potentially be contradicted by the Employment Agreement itself, there is no indication on the face of the Agreement that it was manually revised *after* Plaintiff and Defendant Usman both signed it on February 1, 2017.  As it must at the motion to dismiss stage, the Court accepts Plaintiff's well-pleaded allegations as true and finds no mutual assent issue in this respect.  *See Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

evidence, specifically, that he was "partially paid for his work and Defendant withheld the requisite tax amounts" bi-weekly.  (Pl. Opp. 14 (citing *Cobble Hill*, 74 N.Y.2d at 483)).  The Court agrees that this extrinsic evidence suffices.  "[A] contract which is too amorphous to enforce when made may, over time, take on a more definite shape through the parties' conduct[.]"  *Khurana* v. *Wahed Inv., LLC*, No. 18 Civ. 233 (LAK) (BCM), 2020 WL 364794, at *7 (S.D.N.Y. Jan. 8, 2020), *report and recommendation adopted*, No. 18 Civ. 233 (LAK), 2020 WL 364022 (S.D.N.Y. Jan. 22, 2020).  Plaintiff alleges that he "was paid his bi-weekly salary without fail during his tenure at the Company" (FAC ¶ 14), and that Defendants made "the requisite tax and benefit withholdings as required by employers in the State of New York" (*id.* ¶ 12).  The Court is satisfied that, by reference to regular bi-weekly payments, the Employment Agreement's salary provision is not indefinite for lack of a precise dollar figure.

Nevertheless, the Court finds that the Employment Agreement is unenforceable because the stock award portion of the compensation provision amounts to an insufficiently definite material term.  To review, Plaintiff's breach of contract claim centers on the language requiring that Adaptive "shall … offer [Plaintiff] a onetime stock award equivalent to 10% of the Company as of February 1st, 2017."  (Emp. Agmt. 1).  The Court does not arrive at its conclusion that this promise is indefinite because — as Defendants argue — the Agreement fails to define "stock award equivalent" by not specifying "what form the 'equivalent' would take."  (Def. Br. 9-10; *see also* Def. Reply 5).  Defendants' argument is misguided.  The Agreement does not group

the words "stock award equivalent" into a standalone phrase.  Instead, it provides that Defendants shall offer Plaintiff "a onetime stock award *equivalent to 10% of the Company as of February 1st, 2017.*"  (Emp. Agmt. 1 (emphasis added)).  The word "equivalent" is clearly meant only to convey the value of the stock award (10% of Adaptive as of February 1, 2017), not to convey that Adaptive would offer Plaintiff something equivalent to a stock award.  In this respect, the stock award offer provision is not indefinite.

Rather, the Court concludes that the provision is indefinite because it does not specify *when* the onetime stock award offer was to be made.  The "language on its face … constitutes an agreement to make an offer *at some unspecified point in time.*"  (Def. Br. 9 (emphasis added)).  That is an insufficiently definite promise to compensate an employee such as Plaintiff. Compensation is an essential term of an employment contract under New York law.  *See Roelcke*, 571 F. Supp. 3d at 230.  The stock award offer provision was part of the Employment Agreement's compensation clause.  (Emp. Agmt. 1). The timing of this stock award offer is a missing essential term because it is crucial to Plaintiff's compensation under the Employment Agreement.  "In determining whether omitted terms are essential to a contract, New York courts adopt a flexible approach and look at the 'broad framework' of a contract." *Miller* v. *Tawil*, 165 F. Supp. 2d 487, 494 n.12 (S.D.N.Y. 2001) (quoting *Shann* v. *Dunk*, 84 F.3d 73, 77 (2d Cir. 1996)).  The Court cannot enforce Defendants' promise to compensate Plaintiff with a stock award at some indefinite time in the future.  *See, e.g.*, *Delaney* v. *Bank of Am. Corp.*, 766 F.3d 163, 171 (2d Cir.

2014) (per curiam) (citing *Hecht* v. *Helmsley-Spear, Inc.*, 885 N.Y.S.2d 292, 292 (1st Dep't 2009) (finding, in the context of an oral agreement, that the "lack[ ] [of] any actual terms as to the amount, form, *and timing* of payment of any compensation … failed to manifest a clear intention on the part of the parties to form a binding, definite … agreement" (emphasis added))).  The difference between, say, receiving the stock award offer soon after the Agreement's execution, and receiving it four years later, is so potentially substantial that the timing of the stock award offer is itself an essential term, the omission of which makes the Employment Agreement unenforceable.  *See Miller*, 165 F. Supp. 2d at 494 n.12.

Unlike the promise to pay Plaintiff a bi-weekly salary, which took on more definite shape by reference to the bi-weekly payments to Plaintiff throughout his employment (*see* FAC ¶¶ 12, 14), the promise to offer Plaintiff a onetime stock award equivalent to 10% of Adaptive as of February 1, 2017, remained amorphous.  *Cf. Khurana*, 2020 WL 364794, at *7.  More than four years after the execution of the Employment Agreement, in April 2021, Defendants offered Plaintiff the Profit Participation Agreement, "entitling Plaintiff to his salary plus 'Cash Bonus Compensation equal to 10% of the "Cash Available" for each year that (he was) employed by the Company.'"  (FAC ¶ 28; PPA).  But 10% of Adaptive's available cash is plainly something altogether different from 10% of its stock as of February 1, 2017.[5]  Therefore,

---

[5]    Defendants argue in the alternative that, should the Court conclude that the Employment Agreement is valid, the PPA offer amounts to performance of the Employment Agreement's stock award offer provision.  (*See* Def. Br. 10-11; Def. Reply 5-

the Profit Participation Agreement did nothing to give shape to the Employment Agreement's stock award offer.  Likewise, on July 9, 2021, Defendants offered Plaintiff "10% of [Defendant Hinder's] equity in Adaptive Green Inc. on April 26, 2023."  (Sub Agmt.; FAC ¶ 32).  That, too, is quite different from a stock award of 10% of the company as of February 1, 2017.  These subsequent offers shed no light on the material term missing from the Employment Agreement: *when* Adaptive was to offer Plaintiff a stock award equivalent to 10% of Adaptive as of February 1, 2017.  Lacking this material term, Plaintiff has failed to allege the formation of a valid contract, and so the Court dismisses his claim that Defendants breached the Employment Agreement.

### b. Plaintiff Rejected Defendants' Offer and the Profit Participation Agreement Was Never Formed

Defendants' motion to dismiss is primarily concerned with Plaintiff's claim that they breached the Employment Agreement.  However, Plaintiff also alleges that Defendants denied him benefits pursuant to the Profit Participation Agreement and the Sub Agreement (FAC ¶ 38), and in so doing additionally breached the PPA (*id.* ¶ 58) and the Sub Agreement (*id.* ¶ 59).  Although Defendants only briefly address these claims, they do appear to seek dismissal of them.  (*See* Def. Br. 3; Def. Reply 2-3).  Like Plaintiff's claim for breach of the

---

6).  The Court need not, and does not, reach whether Defendants breached the Employment Agreement because it finds that Plaintiff has not plausibly alleged the formation of a valid contract.  However, the PPA and the Sub Agreement are relevant to the Court's analysis of Plaintiff's breach of contract claim regarding the Employment Agreement insofar as they shed light on the meaning of the terms contained in the Employment Agreement.  The Court addresses the validity of both the PPA and the Sub Agreement *infra*.

Employment Agreement, the Court finds that his claims for breach of these agreements fail because Plaintiff has not plausibly alleged that valid contracts were formed.

Defendants offered Plaintiff the Profit Participation Agreement "in or about April of 2021." (FAC ¶ 28). Plaintiff alleges that the PPA "entitl[ed] Plaintiff to his salary plus 'Cash Bonus Compensation equal to 10% of the "Cash Available" for each year that (he was) employed by the Company.'" (*Id.*). He alleges that the "Profit Participation 'offer' … was signed by the Defendant Usman on April 21, 2021 and accepted by the Plaintiff on September 1, 2021." (*Id.* ¶ 29). Furthermore, Plaintiff alleges that the PPA "was amended by the parties in significant fashion prior to its execution by Plaintiff, [and] Defendant Usman did not object to any of the changes when it was delivered to him with Plaintiff's signature." (*Id.* ¶ 31). Indeed, the PPA contains alterations, including — as is most relevant here — the crossing out of the phrase "for each year that you are employed by the Company," which immediately follows the phrase, "[t]he Company shall pay you, in addition to your base salary, Cash Bonus Compensation equal to 10% of the 'Cash Available.'" (PPA 1). The phrase "[u]ntil [s]ale of stock/share" is inserted in its stead. (*Id.*).

This alteration amounts to Plaintiff's rejection of Defendants' offer, and consequently no contract was formed. "'[F]or an acceptance to be effective, it must comply with the terms of the offer and be clear, unambiguous and unequivocal.'" *Sullivan* v. *Ruvoldt*, No. 16 Civ. 583 (ER), 2017 WL 1157150, at *6 (S.D.N.Y. Mar. 27, 2017) (quoting *King* v. *King*, 617 N.Y.S.2d 593, 594 (3d

16

Dep't 1994)).  Here, Defendants offered Plaintiff the PPA in April 2021.  (FAC ¶ 28).  Plaintiff altered the terms of the PPA before he signed it on September 1, 2021.  Although Plaintiff alleges that the PPA "was amended *by the parties*[6] ... prior to its execution by Plaintiff," in the same breath he alleges that "Defendant Usman did not object to any of the changes when it was *delivered to him with Plaintiff's signature*."  (FAC ¶ 31 (emphases added)).  As alleged, Plaintiff amended Defendants' offer, and Plaintiff takes Defendants' lack of objection (not some affirmative act of assent) after his supposed acceptance to mean that a contract was formed.  It was not.  In effect, Plaintiff rejected Defendants' offer and made an unanswered counteroffer, and thus no contract was formed.  *See In re Westinghouse Elec. Co.*, 588 B.R. 347, 354 (Bankr. S.D.N.Y. 2018) ("If ... the offeree responds by conditioning acceptance on new or modified terms, that response constitutes both a rejection and a counteroffer which extinguishes the original offer.'" (quoting *Thor Props., LLC* v. *Willspring Holdings*, 988 N.Y.S.2d 47, 49 (1st Dep't 2014))).  Therefore, Plaintiff's breach of contract claim regarding the PPA (FAC ¶ 58) is dismissed.

### c.    The Sub Agreement Is Invalid Because a Condition Precedent to Formation Did Not Occur

The Sub Agreement is quite short.  It provides that:

> I, Jamison Hinder, promise to give Bradley Haller 10% of my equity in Adaptive Green Inc. on April 26, 2023. This will occur when the company restructures and refiles for certifications.

---

6    The Court agrees with Defendants that, "[a]lthough [Plaintiff] alleges that the Profit Participation Offer 'was amended by the parties,' it is apparent on the face of the document that the amendments were made by him alone, as the changes refer to him in the first person."  (Def. Br. 3 n.2).

(Sub Agmt.).  Plaintiff, as well as Defendants Hinder and Usman, signed it on July 9, 2021.  (*Id.*; FAC ¶ 32).  Plaintiff alleges that Adaptive "restructured when Plaintiff, a shareholder, was terminated on December 31, 2021."  (FAC ¶ 36).  And he alleges that the company "refiled for certification of its Minority and Women Owned Business [status] sometime after July 9, 2021."  (*Id.* ¶ 37).  The parties appear to agree that there are two conditions precedent to the Sub Agreement: the restructuring of Adaptive, and the refiling for Adaptive's certifications.  (*See* Def. Br. 3; Pl. Opp. 9; Def. Reply 2-3).  However, in their briefing, they do not give much attention to the question of whether Defendants breached the Sub Agreement.  Assuming (without deciding) that the "certifications" mentioned in the Sub Agreement are the certifications alleged in the complaint (FAC ¶ 37), the Court agrees with Defendants that Plaintiff's allegation that Adaptive restructured when he, "a shareholder, was terminated," is insufficient because it is contradicted by the terms of both the Employment Agreement and the PPA, which are incorporated by reference in the First Amended Complaint.  (*See* Def. Br. 3).

The restructuring of the company and the refiling for certification are both express conditions precedent.  Under New York law, there are two distinct types of conditions precedent: conditions precedent to performance, and conditions precedent to formation.  *See Kortright Cap. Partners LP* v. *Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 680 (S.D.N.Y. 2018) (citing *Oppenheimer & Co.* v. *Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685 (1995)).

"On one hand, conditions precedent to performance 'describe acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract.'" *Id.* (quoting *Oppenheimer*, 86 N.Y.2d at 690). "On the other hand, 'condition[s] precedent to the formation or existence of the contract itself' are conceptually distinct, and 'no contract arises unless and until the condition occurs.'" *Id.* (alteration in original) (quoting *Oppenheimer*, 86 N.Y.2d at 690 (internal quotation marks omitted)). The parties' choice of language — the addition of a clause clarifying that the equity payment "will occur *when* the company restructures and refiles for certifications" (Sub Agmt. (emphasis added)) — clearly "evinces their intent to create an express condition precedent." *Kortright*, 327 F. Supp. 3d at 681. The question is whether it is a condition precedent to the Sub Agreement's formation, or to its performance.

The Court finds that restructuring and recertification are twin conditions precedent to the contract's formation. The Sub Agreement "does not necessarily reveal an intent to be bound <u>unconditionally</u> — rather, considered as a whole," the Sub Agreement "conditions its effectiveness and binding nature on the occurrence of the condition specified" in the second clause. *Kortright*, 327 F. Supp. 3d at 682. That is, the contract would effectively be "null and void" unless the condition was fulfilled. *Id.* (citing *SCS Commc'ns, Inc.* v. *Herrick Co.*, 360 F.3d 329, 341 (2d Cir. 2004) (quoting *Oppenheimer*, 86 N.Y.2d at 687)); *see also Kapson Constr. Corp.* v. *ARA Plumbing & Heating Corp.*, 642 N.Y.S.2d 701, 703 (2d Dep't 1996) ("Since the existence of the

19

contract [is] premised on the satisfaction of a condition precedent, no contract arises unless and until the condition occurs[.]" (internal quotation marks omitted)).  The promise to "give [Plaintiff] 10% of [Hinder's] equity in Adaptive Green Inc. on[7] April 26, 2023" is entirely dependent on whether the company restructures and refiles for certifications.  (Sub Agmt.).  In other words, the parties evince no intent to be bound independent of whether Adaptive restructures and refiles for certifications.  To conclude instead that these are conditions precedent to performance would "invite[ ] a circular result," *Kortright*, 327 F. Supp. 3d at 681, allowing Defendants to avoid their obligations under the Sub Agreement by simply choosing not to restructure and recertify, as they might well have done.

Having found that these are conditions precedent to formation, the Court finds that Plaintiff has not plausibly alleged that Adaptive restructured, and, consequently, Plaintiff has not plausibly alleged the formation of a contract. Plaintiff alleges that Adaptive "restructured when [he], a shareholder, was terminated on December 31, 2021."  (FAC ¶ 36).  Although Plaintiff alleges that he is a "shareholder" of Adaptive elsewhere in the First Amended Complaint (*see, e.g.*, *id.* ¶¶ 9, 21, 23), the Employment Agreement and PPA, which are incorporated by reference in the First Amended Complaint, refute this allegation.  *See, e.g.*, *Mwangi* v. *Passbase, Inc.*, No. 21 Civ. 6728 (ER), 2022 WL 2133734, at *8 (S.D.N.Y. June 14, 2022) ("[T]he Court generally accepts as true

---

[7]    The Court interprets "on" to mean "as of."  In other words, under the Sub Agreement, Hinder is to give Plaintiff 10% of his equity in Adaptive as of April 26, 2023.  The parties do not appear to contest this reading.

the allegations in a complaint when considering a 12(b)(6) motion. However, a court need not accept as true an allegation that is contradicted by documents on which the complaint relies." (internal citation and quotation marks omitted)).

Plaintiff is clearly an employee, not a shareholder, of Adaptive. The Employment Agreement refers to him as "an at-will employee." (Emp. Agmt. 1). Likewise, the PPA (which Plaintiff rejected) refers to Plaintiff as an at-will employee. (PPA 2). True, in its non-compete clause, the Employment Agreement states that Plaintiff "will not engage directly or indirectly with any business that competes with the Company ... while the Employee remains a shareholder of Adaptive Green, Inc." (Emp. Agmt. 1). However, this is apparently a one-off reference, which is itself contradicted by clear statements elsewhere in both agreements that Plaintiff is, in fact, an at-will employee. Moreover, even if Plaintiff were a shareholder, he has failed to allege why the firing of a shareholder amounts to a restructuring of Adaptive within the meaning of the Sub Agreement. For these reasons, Plaintiff's claim that Defendants breached the Sub Agreement fails at the formation stage. *See Wachtel* v. *Nat'l R.R. Passenger Corp.*, No. 11 Civ. 613 (PAC), 2012 WL 292352, at *2-3 (S.D.N.Y. Jan. 30, 2012) (finding, at the motion to dismiss stage, that "[s]ince [the] [p]laintiff failed to complete all of the conditions precedent to the formation of the alleged contract, no contract was ever formed," and "[h]aving failed to allege the existence of a valid contract, [the] [p]laintiff's breach of contract action fails").

21

## 2. The Court Dismisses Plaintiff's Standalone Declaratory Judgment Claim

The Court dismisses Plaintiff's standalone claim for a declaratory judgment "declaring the existence of Plaintiff's ownership and equity interest in Adaptive." (FAC ¶ 42). Plaintiff brings this claim under New York C.P.L.R. § 3001, New York's equivalent to the federal Declaratory Judgment Act. That is improper. *See Parker* v. *Citizen's Bank, N.A.*, No. 19 Civ. 1454 (VEC), 2019 WL 5569680, at *4 n.7 (S.D.N.Y. Oct. 29, 2019) ("[T]he [Declaratory Judgment Act], not the CPLR, governs actions in federal court."). The Court will charitably construe Plaintiff's claim as one for a declaratory judgment pursuant to the Declaratory Judgment Act, under which a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a)).

Plaintiff cannot sustain an independent cause of action for a declaratory judgment. A declaratory judgment is a remedy, not a cause of action. *See In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("[A] request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights."); *see also Aetna Life Ins. Co. of Hartford, Conn.* v. *Haworth*, 300 U.S. 227, 240 (1937) (stating that the Declaratory Judgment Act does not provide an independent cause of action); *Blue Angel Realty, Inc.* v. *United States*, No. 20 Civ. 8220 (KPF), 2022 WL 94599, at *14 (S.D.N.Y. Jan. 8, 2022) (noting that "[d]eclaratory judgments … are remedies, not causes of action" (alteration in original) (internal quotation marks omitted)). Rather, the operation of the Declaratory

Judgment Act "is procedural only — to provide a form of relief previously unavailable." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d at 731 (citing *Aetna Life Ins. Co.*, 300 U.S. at 240).

Accordingly, Defendants' motion to dismiss Count I is granted. This ruling should not, however, be construed as a finding that Plaintiff may not seek a declaratory judgment as a remedy for his surviving claims.

### 3. Plaintiff States a Claim for Unjust Enrichment and *Quantum Meruit*

In addition to his breach of contract claim, Plaintiff brings a number of quasi-contract claims. Quasi-contract claims are "obligation[s] the law creates in the absence of any agreement." *Exch. Listing, LLC* v. *Inspira Techs., Ltd.*, 661 F. Supp. 3d 134, 152 (S.D.N.Y. 2023) (quoting *Diesel Props S.r.l.* v. *Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011)). Under New York law, plaintiffs may alternatively plead quasi-contract claims alongside a breach of contract claim where the enforceability of the contract is genuinely disputed. *Id.* at 153 (citing *Pers. Watercraft Prod. SARL* v. *Robinson*, No. 16 Civ. 9771 (AJN), 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017); *Piven* v. *Wolf Haldenstein Adler Freeman & Herz L.L.P.*, No. 08 Civ. 10578 (RJS), 2010 WL 1257326, at *9 (S.D.N.Y. Mar. 12, 2010); *Wilmoth* v. *Sandor*, 686 N.Y.S.2d 388, 390-91 (1st Dep't 1999)).

At the outset, the Court finds — contrary to Defendants' contention (*see* Def. Br. 14-15) — that Plaintiff can bring quasi-contract claims despite asserting that the underlying contract is enforceable. Where, as here, the parties contest the validity of a contract, a plaintiff who maintains that the

contract is enforceable can nonetheless bring quasi-contract claims. *See, e.g.*, *Negotiatus Corp.* v. *Viola Inc.*, No. 24 Civ. 243 (KPF), 2025 WL 416021, at *7 (S.D.N.Y. Feb. 6, 2025) (declining to dismiss alternative quasi-contract claims where the parties disputed the existence of a contract, at the motion to dismiss stage); *Protex Indus. (H.K.) Ltd.* v. *Vince Holding Corp.*, No. 23 Civ. 1793 (MKV), 2024 WL 4149188, at *13-14 (S.D.N.Y. Sept. 11, 2024) (same); *Keybanc Cap. Mkts., Inc.* v. *Extreme Steel, Inc.*, 710 F. Supp. 3d 239, 247 (S.D.N.Y. 2024) ("[C]ourts regularly allow plaintiffs to maintain unjust enrichment and quantum meruit claims as pleadings in the alternative at the motion to dismiss stage where the validity and scope of the contract is difficult to determine, where the parties dispute the existence of a contract, or where the claims arise out of agreements or understandings of the parties that were not expressly written in the contract." (internal quotation marks omitted and alteration adopted)). Plaintiff brings quasi-contract claims for unjust enrichment and *quantum meruit* (Count III), an equitable accounting (Count V), and a constructive trust (Count VI). The Court will address each in turn, beginning with Plaintiff's combined unjust enrichment/*quantum meruit* claim.

"Under New York law, unjust enrichment and quantum meruit claims are analyzed together as a single quasi-contract claim." *Barker* v. *Bancorp, Inc.*, Nos. 21 Civ. 869 (KPF), 21 Civ. 896 (KPF) & 21 Civ. 897 (KPF), 2022 WL 595954, at *13 (S.D.N.Y. Feb. 25, 2022); *see also Int'l Techs. Mktg., Inc.* v. *Verint Sys., Ltd.*, 991 F.3d 361, 365 n.1 (2d Cir. 2021) (citing *Mid-Hudson Catskill Rural Migrant Ministry, Inc.* v. *Fine Host Corp.*, 418 F.3d 168, 175 (2d

Cir. 2005) ("Applying New York law, we may analyze quantum meruit and unjust enrichment together as a single quasi contract claim.")). "This is because 'quantum meruit and unjust enrichment are not separate causes of action; rather, unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning "as much as he deserves," is one measure of liability for the breach of such a contract.'" *MaxEn Cap. Advisors, Ltd.* v. *Pure Lithium Corp.*, No. 24 Civ. 2231 (GHW), 2024 WL 4520062, at *10 (S.D.N.Y. Oct. 17, 2024) (quoting *Di Simone* v. *CN Plumbing, Inc.*, No. 13 Civ. 5088 (JG), 2014 WL 1281728, at *6 (E.D.N.Y. Mar. 31, 2014) (internal quotation marks omitted) (quoting *Seiden Assocs., Inc.* v. *ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991), *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992))).

"Unjust enrichment is 'a New York common law quasi-contract cause of action requiring the plaintiff to establish: "[i] that the defendant benefitted; [ii] at the plaintiff's expense; and [iii] that equity and good conscience require restitution."'" *MaxEn*, 2024 WL 4520062, at *10 (quoting *Myun-Uk Choi* v. *Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (quoting *Kaye* v. *Grossman*, 202 F.3d 611, 616 (2d Cir. 2000))). To recover in *quantum meruit*, "a claimant must establish [i] the performance of services in good faith, [ii] the acceptance of the services by the person to whom they are rendered, [iii] an expectation of compensation therefor, and [iv] the reasonable value of the services." *Mid-Hudson*, 418 F.3d at 175; *accord Learning Annex Holdings, LLC* v. *Cashflow Techs., Inc.*, 652 F. App'x 67, 70 (2d Cir. 2016) (summary order).

25

Once again, "[i]n New York, 'unjust enrichment and quantum meruit claims rise and fall together[.]" *D3 Int'l, Inc.* v. *AGGF Cosm. Grp. S.p.A.*, No. 21 Civ. 6409 (LJL), 2023 WL 2390552, at *10 (S.D.N.Y. Mar. 7, 2023) (quoting *Cambridge Cap. LLC* v. *Ruby Has LLC*, 565 F. Supp. 3d 420, 460 (S.D.N.Y. 2021), *appeal dismissed*, No. 23-408 (2d Cir. Sept. 12, 2023)).

Here, Plaintiff brings a combined claim of unjust enrichment and *quantum meruit.* (Count III). The Court finds that he has plausibly alleged this claim. Plaintiff alleges that he provided "financial, sales, operations and marketing services" to Defendant Adaptive, "relying on a written employment agreement, as well as representations and perceived good faith of Defendant Adaptive's stock owners, Defendants Usman and Hinder." (FAC ¶ 7). Plaintiff began working for Adaptive in April 2016 (*id.* ¶ 44), and he entered into the written Employment Agreement to become Adaptive's Project Director on February 1, 2017 (*id.* ¶ 8). He worked for Adaptive until he was terminated on December 31, 2021. (*Id.* ¶ 36). What is contested here is whether Plaintiff has sufficiently alleged a frustrated expectation of compensation that requires restitution in equity and good conscience. According to Defendants, Plaintiff "knew what the 'deal' was when he began working for Defendants[,] and no one forced him to continue working for Defendants when (and if) he grew dissatisfied with his compensation." (Def. Br. 14). The Court disagrees with this characterization.

Plaintiff alleges that "Defendants made numerous and extensive representations to Plaintiff reiterating and confirming Plaintiff's 10% ownership

interest in … Adaptive." (FAC ¶ 24). Specifically, he alleges that, in a July 18, 2019 response to an email from Plaintiff, Defendant Usman "referred Plaintiff to the … Employment Agreement when discussing Plaintiff's 'ownership stake.'" (*Id.* ¶¶ 25-26). Plaintiff "expected that [he] would be compensated by his bi-weekly salary *as well as the 10% stock award as of February 1, 2017.*" (*Id.* ¶ 68 (emphasis added)). When that did not materialize, Defendants offered Plaintiff a percentage of Adaptive's cash available. (PPA 1). And when that, too, did not materialize, Defendants offered Plaintiff 10% of Defendant Hinder's equity in Adaptive as of April 26, 2023. (Sub Agmt.). In Plaintiff's words, Defendants "refus[ed] to honor [his] equity interest in the company." (FAC ¶ 62).

True, Plaintiff knew he would also be compensated through a bi-weekly salary. (Def. Br. 13). But he also expected to be compensated through stock in the company. This expectation distinguishes Plaintiff from the plaintiffs in *Tasini* v. *AOL, Inc.*, 851 F. Supp. 2d 734 (S.D.N.Y. 2012), *aff'd*, 505 F. App'x 45 (2d Cir. 2012) (summary order), the case on which Defendants rely. (Def. Br. 12-14). There, the plaintiffs "entered into their transactions with the defendants with … no expectation of compensation other than exposure." *Tasini*, 851 F. Supp. 2d at 740. Defendants conveniently ignore the next paragraph of Judge Koeltl's *Tasini* decision, in which he states that "[c]ourts applying New York law require a plaintiff to allege *some expectation of compensation that was denied* in order to demonstrate that equity requires restitution." *Id.* (emphasis added) (citing *Leibowitz* v. *Cornell Univ.*, 584 F.3d 487, 509-10 (2d Cir. 2009)). Here, Plaintiff has sufficiently alleged that he

expected to be compensated through a stock award offer that never materialized.  Plaintiff does not claim that he was not compensated at all for his services.  He claims that he was not compensated according to the terms of the Employment Agreement, and that, therefore, Defendants received more than they paid for from Plaintiff for his services.  Equity and good conscience can require restitution of Defendants' benefit at Plaintiff's expense, and therefore he has plausibly alleged unjust enrichment.

For avoidance of doubt, the Court does not base this conclusion on Plaintiff's subjective, unilateral beliefs — sprinkled throughout the First Amended Complaint — regarding the insufficiency and unreasonableness of his compensation.  For example, Plaintiff alleges that his bi-weekly salary "was not reasonable compensation for [his] efforts and wholly insufficient to compensate him for the work he was doing," which (according to Plaintiff) explains why the parties agreed to the stock award offer.  (FAC ¶ 18).  Furthermore, Plaintiff "believed" that the compensation set forth in the Employment Agreement was unreasonable and insufficient, and thought that the PPA and the Sub Agreement were meant to supplement that compensation.  (*Id.* ¶¶ 30, 34).  And he alleges that Defendants accepted the benefits of his services at a discount, knowing that his salary, and the alternative methods of compensation, were insufficient.  (*Id.* ¶¶ 69-72).  Regardless of whether Plaintiff subjectively believed he was being sufficiently compensated, the First Amended Complaint plausibly alleges that he expected to be compensated through a stock award offer, but never was.

Lastly, Defendants argue (citing no case law) that the Court should dismiss Plaintiff's quasi-contract claims against the individual Defendants Usman and Hinder because Plaintiff failed to allege that he "made any contribution to Usman and Hinder individually, separate and apart from his purported contributions to Adaptive." (Def. Br. 15). The Court disagrees with the premise. Plaintiff alleges that Usman and Hinder are stock owners of Adaptive. (FAC ¶ 7). Usman signed the Employment Agreement in his capacity as Adaptive's President (Emp. Agmt. 2), and he signed the PPA in his capacity as President and CEO (PPA 4). Likewise, both Usman and Hinder signed the Sub Agreement. (Sub Agmt.). As discussed above, these agreements can support a plausible claim of unjust enrichment because Plaintiff alleges that he worked for Adaptive expecting to be compensated by means of a stock offer that never materialized. By offering and signing these agreements, Defendants Usman and Hinder are alleged to have strung Plaintiff along, and as stock owners in Adaptive, they, too, benefitted from Plaintiff's discounted services. At the motion to dismiss stage, this is sufficient. *Cf., e.g.*, *Regnante* v. *Sec. & Exch. Offs.*, 134 F. Supp. 3d 749, 772-73 (S.D.N.Y. 2015) (dismissing unjust enrichment claim against individual defendants where plaintiff failed to allege that they received a benefit or were actually enriched).

### 4. The Court Dismisses Plaintiff's Claim for an Equitable Accounting

Plaintiff claims that he is entitled to an accounting of Adaptive. (FAC ¶ 91). An accounting is an "equitable remedy ... designed to require a person in possession of financial records to produce them, demonstrate how money

was expended and return pilfered funds in his or her possession." *Roslyn Union Free Sch. Dist.* v. *Barkan*, 16 N.Y.3d 643, 653 (2011). Under New York law, to bring a claim for an accounting, a plaintiff must allege "[i] relations of a mutual and confidential nature; [ii] money or property entrusted to the defendant imposing upon him a burden of accounting; [iii] that there is no adequate legal remedy; and [iv] in some cases, a demand for an accounting and a refusal." *Ellington Credit Fund, Ltd.* v. *Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011) (quoting *IMG Fragrance Brands, LLC* v. *Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009)). "The purpose of an equitable accounting is to require a fiduciary to show what he did with the principal's property." *Soley* v. *Wasserman*, 823 F. Supp. 2d 221, 237 (S.D.N.Y. 2011). Indeed, "[u]nder New York law, a plaintiff seeking an accounting … must allege both a fiduciary relationship between the plaintiff and defendant and a breach of that fiduciary duty by the defendant." *Id.* (internal quotation marks omitted).

Plaintiff's claim for an accounting fails because he does not "allege adequate facts to suggest that the parties were in a relationship of sufficient trust and confidence to create either a fiduciary duty or a confidential relationship." *Stadt* v. *Fox News Network*, 719 F. Supp. 2d 312, 323 (S.D.N.Y. 2010). Plaintiff argues that he has sufficiently alleged the existence of a fiduciary relationship with Defendants in part because he held the title of "director," and because he was a shareholder and not an at-will employee. (Pl. Opp. 26-27). Although he points to the language of the PPA, which states that

30

Plaintiff shall hold certain information "in a fiduciary capacity for the benefit of the Company" (*see id.* at 26 (quoting PPA 2)), as previously discussed, Plaintiff rejected the PPA.  As was also previously discussed, rather than a shareholder, Plaintiff has only plausibly alleged that he was an at-will employee of Adaptive. (*See* Emp. Agmt. 1).  New York law is clear that "'employment relationships do not create fiduciary relationships.'"  *Wilson* v. *Dantas*, No. 12 Civ. 3238 (GBD), 2013 WL 92999, at *4 (S.D.N.Y. Jan. 7, 2013) (quoting *Rather* v. *CBS Corp.*, 886 N.Y.S.2d 121, 125 (1st Dep't 2009)), *aff'd,* 746 F.3d 530 (2d Cir. 2014). Nor do employers owe fiduciary duties to former employees.  *See id.*  And even if Plaintiff were considered the holder of a stock option, an at-will employee who was offered a onetime grant of stock options does not have any claim of maintaining a fiduciary relationship with his employer.  *See Lam* v. *Am. Exp. Co.*, 265 F. Supp. 2d 225, 228, 230 (S.D.N.Y. 2003).  Accordingly, the Court dismisses Plaintiff's claim for an equitable accounting (Count V).

### 5.    The Court Dismisses Plaintiff's Claim for a Constructive Trust

"To be entitled to a constructive trust under New York law, a party must establish four elements: [i] a confidential or fiduciary relationship; [ii] a promise, express or implied; [iii] a transfer made in reliance on that promise; and [iv] unjust enrichment."  *Winklevoss Cap. Fund, LLC* v. *Shrem*, 351 F. Supp. 3d 710, 720 (S.D.N.Y. 2019) (quoting *Brand* v. *Brand*, 811 F.2d 74, 77 (2d Cir. 1987)).  Defendants argue that a constructive trust is a remedy, and not a cause of action, under New York law.  (Def. Br. 19).  In point of fact, this is an open question.  "The New York Court of Appeals has not squarely decided

31

[whether a constructive trust is a standalone cause of action] but has referred to a request for a constructive trust as '*purportedly* a cause of action[.]'" *DarkPulse, Inc.* v. *EMA Fin., LLC*, No. 22 Civ. 45 (LGS), 2023 WL 2307386, at *8 (S.D.N.Y. Mar. 1, 2023) (emphasis added) (quoting *Consumers Union of U.S., Inc.* v. *State*, 5 N.Y.3d 327, 347 n.14 (2005)).  More recently, however, "both the Court of Appeals and the Second Circuit have … adjudicated cases involving standalone constructive trust claims without raising questions as to their viability." *Id.* (citing *Cortlandt St. Recovery Corp.* v. *Bonderman*, 31 N.Y.3d 30, 36-37 nn.10-11 (2018); *Jaffer* v. *Hirji*, 887 F.3d 111, 114-16 (2d Cir. 2018)).  Courts in this District have split on the issue.  *See Winklevoss*, 351 F. Supp. 3d at 721 (collecting cases).

If indeed constructive trust is a standalone cause of action under New York law, Plaintiff has not sufficiently pleaded it.  As with his equitable accounting claim, Plaintiff has failed to allege the existence of a fiduciary relationship with any of the Defendants, and the failure to allege such a relationship requires the claim's dismissal.  *See*, *e.g.*, *Faulkner* v. *Arista Recs. LLC*, 602 F. Supp. 2d 470, 484 (S.D.N.Y. 2009) ("As the Court has already found that no fiduciary relationship exists between these [p]arties, [p]laintiffs' claim for a constructive trust fails as a matter of law."); *Regency NYC, Inc.* v. *Atkinson*, No. 23 Civ. 5479 (JGLC), 2024 WL 4337486, at *13 (S.D.N.Y. Sept. 27, 2024) ("The Court dismisses the constructive trust claim … because [plaintiff] fails to plead a confidential or fiduciary relationship with [defendant].").  Thus, the Court dismisses this claim (Count VI).  However,

"[t]he dismissal is largely a technicality, because Plaintiff may seek imposition

of a constructive trust as an equitable remedy if Plaintiff prevails on [his]

unjust enrichment claim." *DarkPulse*, 2023 WL 2307386, at *8 (citing

*Winklevoss*, 351 F. Supp. 3d at 721 ("[E]ven if not permitted to plead

constructive trust as a claim, plaintiffs may, if appropriate, later request, as a

remedy, the imposition of a constructive trust." (internal quotation marks

omitted))).

### 6. The Court Dismisses Plaintiff's Claim for Fraud

"Under New York law, to state a claim for fraud a plaintiff must

demonstrate: [i] a misrepresentation or omission of material fact; [ii] which the

defendant knew to be false; [iii] which the defendant made with the intention of

inducing reliance; [iv] upon which the plaintiff reasonably relied; and [v] which

caused injury to the plaintiff." *Pipala* v. *JP Morgan Chase Bank NA*, No. 16 Civ.

3723 (VB), 2016 WL 7378979, at *2 (S.D.N.Y. Dec. 20, 2016) (quoting *Wynn* v.

*AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (per curiam)).  Beyond pleading

facts demonstrating these elements, "[i]n alleging fraud or mistake, a party

must state with particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b); *see also United States ex rel. Ladas* v. *Exelis, Inc.*, 824 F.3d

16, 25 (2d Cir. 2016).  As the Second Circuit has clarified, "Rule 9(b) places two

further burdens [beyond Rule 8] on fraud plaintiffs — the first goes to the

pleading of the circumstances of the fraud, [and] the second to the pleading of

the defendant's mental state." *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo

Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).

Furthermore, "a cause of action for fraud cannot exist when the fraud claim arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations." *Nwagboli* v. *Teamwork Transp. Corp.*, No. 08 Civ. 4562 (JGK) (KNF), 2009 WL 4797777, at *5 (S.D.N.Y. Dec. 7, 2009) (internal quotation marks omitted); *accord Astroworks, Inc.* v. *Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 616 (S.D.N.Y. 2003) ("[A] plaintiff cannot disguise a breach of contract claim as a fraud claim[.]"). In other words, "a fraud-based claim must be sufficiently distinct from [a] breach of contract claim where it stems from an alleged breached of contract." *TN Metro Holdings I, LLC* v. *Commonwealth Ins. Co.*, 51 F. Supp. 3d 405, 410 (S.D.N.Y. 2014) (internal quotation marks omitted) (citing *Bridgestone/Firestone, Inc.* v. *Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)). Fraud and breach of contract claims can only coexist where a plaintiff can "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Trodale Holdings LLC* v. *Bristol Healthcare Invs. L.P.*, No. 16 Civ. 4254 (KPF), 2018 WL 2980325, at *4 (S.D.N.Y. June 14, 2018) (quoting *Bridgestone*, 98 F.3d at 19-20).

The allegations in the First Amended Complaint cannot support a sufficiently distinct fraud claim. Plaintiff alleges that Defendants owed him a fiduciary duty, distinct from their obligations to him under the three purported

contracts (FAC ¶¶ 76-78), but the Court has already found that no such fiduciary duty could exist.  Plaintiff further alleges that he provided services to Defendants with the expectation that he was and/or would be a shareholder in Adaptive.  (*Id.* ¶¶ 79-80).  And he alleges that Defendants made "numerous" misrepresentations intended to induce (and actually inducing) his detrimental reliance.  (*Id.* ¶ 83).  However, the alleged misrepresentations appear to be exactly what was stated in the Employment Agreement.  (*Id.* ¶ 84).  Likewise, in his opposition brief, Plaintiff states that his fraud claim is also based on a false promise, contained in the Employment Agreement, to give him access to "all tools to be a successful employee."  (Pl. Opp. 25).  Appearing to recognize that he cannot base a fraud claim solely on alleged misrepresentations in the Employment Agreement, Plaintiff explains that "[m]ost of the evidence supporting [his] fraud claim, including the intentional misrepresentations of the Defendants, are on [Adaptive's] email server to which [he] has no access."  (*Id.*).

Therein lies the problem for Plaintiff.  To the extent his fraud claim is based on misrepresentations extraneous to the Employment Agreement (and it is unclear that it is), he has not alleged with particularity when these misrepresentations took place.  *Cf.* Fed. R. Civ. P. 9(b); *Exelis, Inc.*, 824 F.3d at 25.  In fact, he appears to concede that he does not presently have knowledge of individual misrepresentations.  (*See* Pl. Opp. 25).  To the extent Plaintiff's fraud claim is based on misrepresentations contained in the Employment Agreement (as it appears to be), the putative misrepresentations are not

sufficiently collateral or extraneous to the purported contract in question. *Cf. Nwagboli*, 2009 WL 4797777, at *5. Accordingly, the Court dismisses Plaintiff's fraud claim (Count IV).[8]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the First Amended Complaint is GRANTED IN PART and DENIED IN PART. The Court dismisses all claims other than Plaintiff's claim for unjust enrichment/*quantum meruit*. The parties are hereby ORDERED to file a joint letter regarding proposed next steps, and to submit a proposed case management plan, on or before **March 14, 2025**. The Clerk of Court is directed to terminate the pending motion at docket entry 22.

SO ORDERED.

Dated:    February 25, 2025
          New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge

---

[8]    Defendants also argue that any fraud claim against Defendants Usman and Jamison is barred by the statute of frauds. (Def. Br. 16-17). This argument is based on a reading of FAC ¶ 84 to mean that Usman and Hinder orally stated, independently of what was memorialized in the Employment Agreement, that Plaintiff would receive a 10% interest in Adaptive as of February 1, 2017. The Court reads this allegation to rehash what is set forth in writing. Nevertheless, if indeed this allegation can be taken to mean that Usman and Hinder both independently orally promised that Plaintiff would receive a 10% interest in Adaptive, Plaintiff cannot rest a fraud claim on such alleged promises because they amount to promises to answer for the debt of another, which must be in writing in order to be enforceable. *See Scuderi* v. *Springer*, No. 03 Civ. 2098 (RO), 2004 WL 2711048, at *1 (S.D.N.Y. Nov. 29, 2004) (citing N.Y. Gen. Oblig. L. § 5-701(a)).